IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:17-cv-01362-RM-NRN

JOHN STOOPS,

    Plaintiff,

v.

CHARLENE LARSON,
BRITTANY DOWIS,
GRACE L. KIER, and
LORI HOLTER,

    Defendants.

___

# ORDER
___

This matter is before the Court on Defendants' motion for summary judgment. (ECF No. 182.) Plaintiff, an inmate at the Sterling Correctional Facility ("SCF"), brings this lawsuit under 42 U.S.C. § 1983, alleging that Defendants violated his Eight Amendment rights by providing delayed and inadequate medical care after he broke his hip. Defendants' motion has been fully briefed and is ripe for review. (ECF Nos. 189, 193.) The Court grants the motion for the reasons below.

## I.    LEGAL STANDARDS

Plaintiff proceeds pro se; therefore, the Court liberally construes his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court does not act as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Whether there is a genuine dispute as to a material fact depends on whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted). In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party and resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998); *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

Qualified immunity shields individual defendants named in § 1983 actions unless their conduct was unreasonable in light of clearly established law. *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Id.* (quotation omitted).

To establish an Eighth Amendment claim for delayed or inadequate medical care under § 1983, an inmate must establish that prison officials were deliberately indifferent to his serious

medical needs. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). "Deliberate indifference involves both an objective and a subjective component. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). To satisfy the objective component, a medical need must be either sufficiently serious that it has been diagnosed by a physician as mandating treatment or so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Oxendine*, 241 F.3d at 1276. For claims involving a delay in receiving medical care, the plaintiff must show that the delay resulted in substantial harm. *Id.* To satisfy the subjective component, the plaintiff must show that the prison official knew of and disregarded an excessive risk to his health or safety by failing to take reasonable measures to abate it. *Id.*; *Sealock*, 218 F.3d at 1209. For claims involving failure to treat a serious medical condition properly, a medical professional's mere negligence in diagnosing or treating the condition does not constitute deliberate indifference. *Sealock*, 218 F.3d at 1211 (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

## II.   BACKGROUND

On June 9, 2015, Plaintiff had an epileptic seizure and fell, injuring his right hip. He was taken by wheelchair to the medical clinic, where he was seen by Defendant Larson. Defendant Larson cleaned the gravel out of Plaintiff's hand and elbow and then released him back to his unit. Defendant contends that Defendant Larson refused to examine his hip or order an x-ray and that she told him he would be called back for a follow-up. He further contends that in response to his complaint of intense pain in his leg Defendant Larson told him to "walk it off," exacerbating his injury and causing severe pain. (ECF No. 94, Am. Compl. at 7, ¶ 3.)

Over the next four days, Plaintiff complained of severe pain to nurses in the med-line. The med-line is where inmates receive medications twice a day, and where Plaintiff received his

3

epilepsy medication. Although SCF regulations prohibit inmates and staff from discussing medical issues in the med-line, Plaintiff contends that he complained to the nurses in the med-line because no one responded to his "emergency kites," which are paper requests to be seen by medical staff submitted by inmates. (*Id.* at 8, ¶ 4.) Plaintiff further contends he was told by the med-line nurses that he would be placed on an "on call" list to receive medical care. (*Id.* at ¶¶ 4, 5.) Defendants Kier and Holter both worked in the med-line during this time period, though the complaint does not contain specific allegations as to either of them with respect to their conduct in the med-line.

On June 13, 2019, Plaintiff was seen again at the medical clinic, this time by Defendant Dowis. She gave him a wheelchair and told him he was on the list to receive an x-ray in two days. The amended complaint alleges that she did not examine his hip or take his vitals.[1]

That evening, Plaintiff declared an emergency and returned to the medical clinic, where he was seen by Defendant Kier. Plaintiff contends that Defendant Kier had a "hostile attitude" and performed a "hurried examination" without giving him anything for his pain. (*Id.* at 10, ¶ 13.) He was then sent to the reginal medical center.

The events that occurred after Plaintiff left SCF are not directly relevant, but they help provide context for Plaintiff's claims. At the regional medical center, an x-ray revealed that Plaintiff had a fractured hip. He was then transferred to the hospital. There, Plaintiff contends he fell while transitioning between a bed and a walker, further exacerbating his injury. Plaintiff received a hip replacement on June 16, 2015. A few days later, Plaintiff was transferred to another facility while he recovered from his surgery. He returned to SCF on August 11, 2015.

---

[1] In his response to the motion for summary judgment, Plaintiff contradicts the latter allegation, stating that Defendant Dowis did take his vitals and arguing that "you can't judge whether a person has a broken bone by their blood pressure." (ECF No. 189 at ¶¶ 7, 9.)

4

On August 21, 2015, Plaintiff filed an informal grievance about the medical care he received, followed by a step 1 grievance on August 29. On November 12, 2019, he received a letter stating that his grievance was untimely because it was not filed within thirty days of the date he knew or should have known of the facts giving rise to the grievance. (ECF No. 182-5.) The letter also stated that Plaintiff had not exhausted his administrative remedies because he failed to request allowable relief. (*Id.*)

Plaintiff filed this lawsuit on June 5, 2017, asserting several claims against various individuals and entities. (ECF No. 94.) Only his Eighth Amendment claims against Defendants, four medical care providers at SCF, remain pending. (*See* ECF No. 177 (dismissing Plaintiff's other claims).)

### III. DISCUSSION

#### A. Motion for Summary Judgment

Defendants contend they are entitled to summary judgment because (1) Plaintiff failed to exhaust his administrative remedies, (2) they are entitled to qualified immunity, and (3) the complaint fails to state an Eighth Amendment violation. The Court agrees with all three contentions.

##### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires inmates to exhaust administrative remedies before filing suit under § 1983. 42 U.S.C. § 1997e(a); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). But exhaustion is not required if remedies are not "available." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019). If the defendant proves that the plaintiff did not exhaust his administrative remedies, "the onus falls on the plaintiff to show that remedies were unavailable to him." *Id.* (quotation omitted). Administrative remedies are not available

5

under the PLRA if prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* (quotation omitted); *see also Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (holding that exhaustion is not required "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy").

Plaintiff concedes that he did not meet the thirty-day deadline for filing a step 1 grievance. He argues that he attempted to file a grievance before he returned to SCF but that "three different staff members" told him that he could not file one "until [he] returned to [his] mother facility." (ECF No. 189 at 4.) He also argues that he spoke with an attorney who told him the grievance procedure was exhausted once he was denied a grievance, and that he was on heavy pain medication after his surgery. But these arguments are insufficient to establish that the grievance process was not available to him. "[I]t is well established that ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (quotation omitted). Plaintiff's alleged confusion about the grievance process does not excuse his failure to comply with SCF's grievance procedures. Those procedures clearly contemplate grievances being sent to different facilities within the Colorado Department of Corrections. (*See* ECF No. 182-4, Administrative Regulation 850-04 at 9 ("The grievance coordinators shall be responsible for tracking all grievances sent to other facilities for responses, as well as grievances sent to their facilities.").) There is no evidence that anyone interfered with Plaintiff's ability to access the grievance process or used intimidation or other means to thwart his access to it.

Plaintiff does not address the additional reason he failed to exhaust his administrative remedies—his failure to request allowable relief. Because he has not established the existence of

a genuine issue as to whether administrative remedies were available, Defendants are entitled to summary judgment on this basis.

## 2. Qualified Immunity and Eighth Amendment Claims

Even assuming Plaintiff's claims were not barred for failure to exhaust administrative remedies, he has not met his burden of showing that Defendants violated his Eighth Amendment rights; therefore, Defendants are entitled to qualified immunity. The gist of Plaintiff's claims is that Defendants should have done more at SCF to diagnose and treat his hip. But viewing the record in the light most favorable to Plaintiff, he has shown, at most, that Defendants may have been negligent in their diagnoses and treatment. "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). Plaintiff clearly received medical treatment after his fall, and mere disagreements about the level of care cannot sustain an Eighth Amendment claim. *See id.* ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."). Plaintiff has adduced no evidence that any Defendant was consciously aware a serious medical risk to Plaintiff and disregarded it or failed to take reasonable steps to abate it. Nor has he shown that any delay in receiving treatment caused his condition to worsen.

According to Defendant Lawson's report, when she saw Plaintiff, he had only minor injuries to his hands and elbow, which she cleaned and dressed, and he denied needing medical attention. (ECF No. 183-1.) Plaintiff's contentions that he was limping and that he complained about his hip do not establish that Defendant Lawson knew he was subject to a serious medical risk.

Likewise, Plaintiff's contention that he told the med-line nurses he was in severe pain and having trouble walking does not establish that Defendants Holter and Kier knew that he faced a serious medical risk.

According to Defendant Dowis's report, when she saw Plaintiff, he had no visible swelling or redness, and she gave him pain medicine and an ice pass in addition to giving him a wheelchair and submitting a form for an x-ray. (ECF No. 183-7.) Plaintiff's contention that Defendant Dowis never looked at his hip does not establish that she was deliberately indifferent to his medical needs. Rather, the record shows she made efforts to alleviate his pain and to get him scheduled for an x-ray.

Finally, Plaintiff's additional allegations with respect to Defendant Kier do not show deliberate indifference. Plaintiff's contention that he "was forced to sit on an examination table for more than an hour in severe pain without anything for pain" (ECF No. 94 at 10, ¶ 13) does not show a conscious disregard for his medical needs. Rather, even accepting Plaintiff's assertion that she did not give him any pain medicine, the records shows that she followed the protocol for a possible fracture, contacted the on-call physician, and then arranged for him to be sent to the regional medical center. Such conduct does not indicate deliberate indifference.

Plaintiff has adduced no evidence from which a reasonable jury could conclude that Defendants acted with deliberate indifference to his medical needs. Accordingly, Defendants are entitled to qualified immunity as well as summary judgment on Plaintiff's Eighth Amendment claims.

**B.     Motion to Restrict**

Defendants filed a motion to restrict certain exhibits to the motion for summary judgment to protect Plaintiff's privacy interests. (ECF No. 185). According to Defendants, the parties

agreed at a status conference that a protective order was appropriate to protect Plaintiff's medical records. The magistrate judge has previously entered one in this case (ECF No. 123), and the Court finds that restricting these exhibits is also appropriate.

### C. Motion for Continuance

Plaintiff has a filed a motion for a continuance and an order requiring Defendants to send him a list of all witnesses it plans to call at trial. In light of the Court's grant of summary judgment in Defendants' favor, this motion is denied as moot.

## IV. CONCLUSION

For these reasons, Defendants' motion for summary judgment (ECF No. 182) is GRANTED, Defendants' motion to restrict (ECF No. 185) is GRANTED, and Plaintiff's motion for continuance (ECF No. 192) is DENIED AS MOOT. The Clerk is directed to CLOSE this case.

DATED this 6th day of November, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge